**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

RAQUEL ORTIZ RYALS,

Plaintiff,

v. Case No. 6:25-cv-943-JRK

FRANK BISIGNANO,
Commissioner of Social Security,

Defendant.

---

## OPINION AND ORDER[1]

### I. Status

Raquel Ortiz Ryals ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is the result of mental issues including depression and anxiety. Transcript of Administrative Proceedings (Doc. No. 11; "Tr." or "administrative transcript"), filed July 26, 2025, at 66, 73, 228. Plaintiff protectively filed an application for DIB on January 25, 2022, alleging a disability onset date of September 10,

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Order Regarding Consent to Magistrate Judge Jurisdiction in Social Security Appeals (Doc. No. 117), Case No. 3:21-mc-1-TJC (outlining procedures for consent and Defendant's generalized consent to Magistrate Judge jurisdiction in social security appeals cases); consent by Plaintiff indicated in docket language for Complaint (Doc. No. 1).

2018.[2] Tr. at 193-99. The application was denied initially, Tr. at 65, 66-72, 92-95, and upon reconsideration, Tr. at 73-80, 81, 107-09.[3]

On August 13, 2024, an Administrative Law Judge ("ALJ") held a hearing,[4] during which he took testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). See Tr. at 37-64. On September 26, 2024, the ALJ issued a Decision finding Plaintiff not disabled through December 31, 2019, the date Plaintiff was last insured for DIB (the "DLI"). See Tr. at 10-23.

Thereafter, Plaintiff sought review of the Decision by the Appeals Council and submitted a brief authored by her lawyer. See Tr. at 4-5 (Appeals Council exhibit list and order), 190-91 (request for review and cover letter), 340-454 (brief and exhibits). On May 7, 2025, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On May 29, 2025, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

---

[2] One DIB application is dated August 5, 2022 and contains an alleged disability onset date of December 1, 2019. Tr. at 263-67. The DIB application summary by the SSA is dated January 31, 2022. See Tr. at 193. The protective filing date for the DIB application is listed elsewhere in the administrative transcript as January 25, 2022. See, e.g., Tr. at 66, 73.

[3] Some of these documents are duplicated in the administrative transcript. Citations are to the first time a document appears.

[4] The hearing was held via telephone with Plaintiff's consent. Tr. at 40-41, 101-02, 105.

On appeal, Plaintiff argues the ALJ: 1) failed to fully develop the record by neglecting to associate the evidence from a prior application for DIB; 2) erred in addressing the prior administrative findings and opinion of a state-agency medical consultant by mischaracterizing the "overhead reaching" aspect of the opinion; and 3) erred in failing to include any mental limitations in the residual functional capacity ("RFC") assessment. Plaintiff's Memorandum in Opposition to the Commissioner's Decision (Doc. No. 13; "Pl.'s Mem."), filed August 25, 2025, at 1-2; see id. at 3-20. On September 24, 2025, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 14; "Def.'s Mem.") addressing Plaintiff's arguments. After a thorough review of the entire record and consideration of the parties' respective arguments, the undersigned finds that the Commissioner's final decision is due to be affirmed.

## II. The ALJ's Decision

When determining whether an individual is disabled,[5] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a

[5] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. § 404.1520; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step inquiry. See Tr. at 13-23. At step one, the ALJ determined that Plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date of September 10, 2018 through her [DLI] of December 31, 2019." Tr. at 13 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff through the DLI "had the following severe impairments: back disorder (lumbar spondylosis); history of breast adenocarcinoma (status post mastectomy); and obesity." Tr. at 13 (emphasis and citation omitted). At step three, the ALJ found that Plaintiff through the DLI "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 15 (emphasis and citation omitted).

The ALJ determined that Plaintiff had the following RFC through the DLI:

> [Plaintiff could] perform less than the full range of light work as defined in 20 CFR [§] 404.1567(b). She could lift, carry, push and/or pull twenty (20) pounds occasionally and ten (10) pounds frequently. She could stand and walk for six (6) hours and could sit for six (6) hours in an 8-hour workday with normal breaks. She could frequently climb stairs, balance, stoop, kneel, crouch and crawl, but should never climb ladders or scaffolds. Reaching overhead is limited to frequently. She must avoid exposure to vibration, unprotected heights and hazardous machinery.

Tr. at 15-16 (emphasis omitted).

At step four, the ALJ relied on the VE's hearing testimony and found that Plaintiff "has no past relevant work." Tr. at 21 (emphasis omitted). The ALJ then proceeded to the fifth and final step of the sequential inquiry. Tr. at 21-22. After considering Plaintiff's age ("52 years old . . . on the [DLI]"), education ("limited"), lack of work experience, and RFC, the ALJ relied on the VE's testimony and found Plaintiff through the DLI could have performed "jobs that existed in significant numbers in the national economy," such as "cashier," "sales attendant," and "price marker," Tr. at 21-22 (some emphasis and citations omitted). The ALJ concluded Plaintiff "was not under a disability . . . from September 10, 2018, the alleged onset date, through December 31, 2019, the [DLI]." Tr. at 23 (emphasis and citation omitted).

## <u>III. Standard of Review</u>

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported

by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 587 U.S. 97, 103 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

Plaintiff contends the ALJ erred in three ways. Each argument is addressed in turn.

**A. Fully and Fairly Developing the Record**

Plaintiff argues the ALJ erred by neglecting to fully and fairly develop the record because he "fail[ed] to associate the medical evidence from Plaintiff's 2018 application with the present file" and "fail[ed] to consider that evidence in his [D]ecision." Pl.'s Mem. at 3 (emphasis omitted); see id. at 4-7. Responding, Defendant argues that Plaintiff's attempts to establish evidentiary gaps fail because the list of exhibits attached to the ALJ's Decision identifies numerous exhibits from Plaintiff's 2018 DIB claim (the "prior application"). Def.'s Mem. at 4-5. Moreover, argues Defendant, Plaintiff has not shown that any missing evidence warrants remand. Id. at 5.

"It is well-established that the ALJ has a basic duty to develop a full and fair record." Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(d)); see Henry v. Comm'r of Soc. Sec., 802 F.3d 1264, 1267 (11th Cir. 2015) (citing Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995) (per curiam)). This requires an ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." Henry, 802 F.3d at 1267 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)). "Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." Ellison, 355 F.3d at 1276 (citing 20 C.F.R. § 416.912(a), (c)). To remand for failure to develop

evidence, the record must contain "evidentiary gaps which result in unfairness or clear prejudice." Henry, 802 F.3d at 1267 (quoting Brown, 44 F.3d at 935).

Here, the exhibit list attached to the ALJ's Decision shows that much of the medical evidence came from Plaintiff's prior application file. See Tr. at 28. Although Plaintiff contends that any medical opinions that would have been rendered regarding the prior application at the initial and reconsideration levels are not included and should be, see Pl.'s Mem. at 7, Plaintiff's counsel at the hearing had no objection to the ALJ's proposed exhibits (despite moving to reopen the prior application adjudication), Tr. at 41, 56. The ALJ in the written Decision declined to reopen the prior application adjudication, finding that good cause had not been established. Tr. at 10-11; see 20 C.F.R. § 404.988 (allowing for a reopening within four years of a date of determination if good cause is found). Now, Plaintiff does not even attempt to establish unfairness or prejudice resulting from this possibly missing prior opinion evidence. See Pl.'s Mem. at 4-7. On this record, the ALJ did not err in the duty to develop the record because there are no evidentiary gaps which result in unfairness or clear prejudice.

**B. Opinion Regarding Overhead Reaching**

Plaintiff argues the ALJ erred in mischaracterizing the opinion of non-examining state-agency medical consultant Arthur Wells, M.D.[6] Pl.'s Mem. at 7-14. According to Plaintiff, Dr. Wells limited her to occasional lifting overhead, but the ALJ stated the limitation was for frequent lifting. Id. at 9-10. Plaintiff also contends that even though the VE testified Plaintiff could still perform the relevant work in response to a more restrictive hypothetical including "occasional" overhead lifting, that testimony does not save the day because it is inconsistent with the DOT. Id. at 10-14.

Responding, Defendant argues that Dr. Wells gave two different opinions in two different parts of the form (one occasional; one frequent). Def.'s Mem. at 6-7. Even if Dr. Wells intended to opine Plaintiff was limited to the more restrictive occasional overhead lifting, argues Defendant, the VE's testimony that Plaintiff can perform work with that limitation, based on the VE's experience, is sufficient to overcome any DOT conflict and is substantial evidence upon which the ALJ could base the step five findings. Id. at 7-8.

The SSA revised the rules regarding the evaluation of medical evidence for claims filed on or after March 27, 2017. See Revisions to Rules Regarding

[6] The heading for Plaintiff's argument actually refers to a "Dr. Lewis," Pl.'s Mem. at 7 (emphasis omitted), but this evidently is a mistake, as the body of the argument refers to "Arthur Wells, M.D." and cites pages 78-79 of the administrative transcript, Pl.'s Mem. at 9, which contain Dr. Wells' opinion, see Tr. at 78-79.

the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (January 18, 2017); see also 82 Fed. Reg. 15,132 (March 27, 2017) (amending and correcting the final Rules published at 82 Fed. Reg. 5,844). Under the new rules and Regulations, "A medical opinion is a statement from a medical source about what [the claimant] can still do despite [his or her] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions in the following abilities:" 1) the "ability to perform physical demands of work activities"; 2) the "ability to perform mental demands of work activities"; 3) the "ability to perform other demands of work, such as seeing, hearing, or using other senses"; and 4) the "ability to adapt to environmental conditions." 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2); see also 20 C.F.R. § 404.1502 (defining "[a]cceptable medical sources"). An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).[7] "Because section 404.1520c falls within the scope of the Commissioner's authority and was not arbitrary and capricious, it abrogates [the United States Court of Appeals for the Eleventh Circuit's] prior precedents applying the treating-physician rule." Harner v. Soc. Sec. Admin., Comm'r, 38 F.4th 892, 896 (11th Cir. 2022).

[7] Plaintiff filed her application after the effective date of sections 404.1520c and 416.920c, so the undersigned applies the revised rules and Regulations.

The following factors are relevant in an ALJ's consideration of a medical opinion or a prior administrative medical finding: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors, and the ALJ must explain how these factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how he or she evaluated the remaining factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, if the ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . ." 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).[8]

Here, Dr. Wells in one portion of his opinion wrote that Plaintiff's overhead reaching should be "limit[ed] to occasional," Tr. at 78, and in another

[8] When a medical source provides multiple opinions, the ALJ is also not required to articulate how he or she evaluated each medical opinion individually. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). Instead, the ALJ must "articulate how [he or she] considered the medical opinions . . . from that medical source together in a single analysis using the factors listed [above], as appropriate." 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).

portion wrote it should be "frequent," Tr. at 79. The "occasional" limitation appears in a narrative underneath a particular manipulative limitations section of the form, while the "frequent" limitation appears in a more general narrative at the end of the form. Tr. at 78-79. It appears that the "frequent" limitation was "copied and pasted" from the opinion of prior state-agency consultant Prianka Gerrish, M.D., compare Tr. at 71, with Tr. at 79, making it more likely that Dr. Wells' particular notation of "occasional" overhead lifting was what he actually intended to opine.

The ALJ, in addressing Dr. Wells' opinion, indicated that Dr. Wells (together with Dr. Gerrish) limited Plaintiff to frequent overhead reaching bilaterally. Tr. at 21 (citations omitted). Regardless of this potential error in characterization, the ALJ found Dr. Wells' opinion unpersuasive because it was "not fully consistent with the treatment records or entirely supported by the objective medical evidence," Tr. at 21, a finding that Plaintiff does not challenge on appeal. The ALJ ultimately limited Plaintiff to "frequent[]" overhead reaching. Tr. at 16. This limitation is supported by substantial evidence in the record and need not be disturbed.[9]

[9] In light of this finding, the Court need not substantively address the parties' arguments about whether the VE's alternative testimony would suffice at step five. See Pl.'s Mem. at 10-14; Def.'s Mem. at 7-8. In particular, the VE testified that even with a more restrictive "occasional[]" overhead reaching limitation, Plaintiff could still perform the jobs identified. Tr. at 60.

### C. Failure to Include Mild Mental Functioning Areas in RFC

Plaintiff argues the ALJ erred in finding she has mild functional limitations in three different mental areas but then failing to include any mental limitations in the RFC. Pl.'s Mem. at 14-20. Responding, Defendant contends the ALJ was not obligated to include any mental limitations in the RFC, having found them non-severe and having sufficiently explained excluding them. Def.'s Mem. at 9-12.

Step two of the sequential evaluation process requires the ALJ to determine whether a claimant suffers from a severe impairment. See 20 C.F.R. § 404.1520(a)(4)(ii). At this step, "[a]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work[.]" Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). "This step is a 'threshold inquiry' and 'allows only claims based on the most trivial impairments to be rejected.'" Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1265 (11th Cir. 2019) (per curiam) (quoting McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986)).

"[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). In the context of a Social Security

disability benefits case, a condition is severe if it affects a claimant's ability to maintain employment. See id. A claimant has the burden of proving that impairments are severe. See Bowen, 482 U.S. at 146 n.5 (recognizing the claimant's burden of proof at step two to show "a medically severe impairment or combination of impairments"). Further, the impairment either "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509; see also Walker v. Comm'r, Soc. Sec. Admin., 835 F. App'x 538, 542 (11th Cir. 2020) (unpublished).

A severe impairment interferes with a claimant's ability to perform "basic work activities." See Bowen, 482 U.S. at 141; Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101 (11th Cir. 2021) (citing 20 C.F.R. § 404.1520(c)). The Regulations provide six examples of "basic work activities": "(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers, and usual work situations; and (6) Dealing with changes in a routine work setting." 20 C.F.R. § 404.1522; see also Walker, 835 F. App'x at 541-52. "The finding of any severe impairment, based on either a single impairment or a combination of impairments, is enough to satisfy step two because once the ALJ proceeds beyond step two, he is required to consider the claimant's entire medical

condition, including impairments the ALJ determined were not severe." Burgin v. Comm'r of Soc. Sec., 420 F. App'x 901, 902 (11th Cir. 2011) (unpublished).

Any error in identifying severe impairments at step two is harmless if "the ALJ considered all of [the] impairments in combination at later steps in the evaluation process." Burgin, 420 F. App'x at 903 (citation omitted); see Schink, 935 F.3d at 1268 (a step two error "could be harmless if the ALJ nevertheless proceeded in the sequential evaluation, duly considered [the claimant's] mental impairment when assessing his RFC, and reached conclusions about [the claimant's] mental capacities supported by substantial evidence"); Heatly, 382 F. App'x at 825 (stating that an "ALJ is required to demonstrate that [he or she] has considered all of the claimant's impairments, whether severe or not, in combination"); Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir. 1984) (finding that an ALJ must make "specific and well-articulated findings as to the effect of the combination of impairments").

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1545(a)(5). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even

those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also Pupo v. Comm'r, Soc. Sec. Admin., 17 F.4th 1054, 1064 (11th Cir. 2021) (citing Schink, 935 F.3d at 1268); Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)).

Here, the ALJ found at step two that through the DLI, Plaintiff's "medically determinable mental impairments of depressive disorder and anxiety did not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and [were] therefore nonsevere." Tr. at 13. Then, the ALJ assessed the broad areas of mental functioning set forth in the Regulations and 20 C.F.R. Part 404, Subpart P, Appendix 1, and found Plaintiff has no restriction in understanding, remembering, or applying information; mild restriction in interacting with others; mild restriction in concentrating, persisting, or maintaining pace; and mild restriction in adapting or managing oneself. Tr. at 14.

Later, when addressing the medical evidence and assessing the RFC through the DLI, the ALJ specifically recognized Plaintiff's complaints of depression and anxiety. Tr. at 16. The ALJ also detailed medical evidence indicating that after the DLI, Plaintiff was treated for generalized anxiety disorder and major depressive disorder. Tr. at 17. Finally, the ALJ addressed

opinions on Plaintiff's mental functioning, particularly ones rendered well after the DLI (but purporting to relate back to before the DLI), finding them unpersuasive. Tr. at 19-20. Importantly, the ALJ found that during the time period at issue, prior to the DLI, Plaintiff's "mood was repeatedly normal and no abnormalities were noted with [Plaintiff's] memory, insight, judgment, fund of information, affect, behavior, speech, eye contact, attention, concentration, motor activity, appearance, or impulse control." Tr. at 21 (citations omitted); see, e.g., Tr. at 540, 547, 551, 557, 560, 563, 567, 570, 574, 577, 581, 585, 588, 592, 633, 684-85, 688, 691, 694, 701-02, 734, 737-38, 740-41, 742-43, 745-46, 750-51, 768-69 (generally normal findings); but see Tr. at 673 (anxiety without sleep disturbances).[10] Ultimately, the ALJ elected not to include any mental

---

[10] It was only after the December 31, 2019 DLI, on January 9, 2020, that Plaintiff sought treatment specifically in relation to depression and anxiety (although she had previously been prescribed sertraline by her primary care physician). See Tr. at 776. In January and February 2022, Plaintiff attended counseling sessions with Alicia Olivares, LMHC, MCAP, in relation to her anxiety. Tr. at 792-93, 795.

On September 11, 2023, Miguel Mestre, APRN, opined on the functional limitations of Plaintiff's physical and mental disorders. Tr. at 814-22. Evidently, Plaintiff's counsel wanted the opinion forms to be filled out by Dr. Potluri (and another treating doctor), Tr. at 813, but for unknown reasons, Mr. Mestre filled it out instead. Regarding the mental disorders, Mr. Mestre opined that as a result of Plaintiff's depression and anxiety, Plaintiff is limited to less than one-third of the workday in the abilities to concentrate; follow, carry out, remember, and understand simple instructions, use judgment, respond to supervision and coworkers, and deal with changes in a routine work setting. Tr. at 815. According to Mr. Mestre, Plaintiff will be off task more than 60% of the time and can be expected to be absent from work three days per month. Tr. at 815.

(Continued…)

limitations in the RFC, Tr. at 15-16, and the RFC is supported by substantial evidence.

This case is distinguishable from Schink and Arce, upon which Plaintiff relies. See Pl.'s Mem. at 15-17 (citing Schink, 935 F.3d at 1256; Arce v. Comm'r of Soc. Sec., 2024 WL 36061, at *2-3 (11th Cir. 2024)). In Schink, the Eleventh Circuit concluded an ALJ erred in finding a claimant's mental impairments to be non-severe at step two and in later failing to account for them in the RFC; in so finding, the Eleventh Circuit detailed evidence that the claimant suffered from significant mental impairments that caused limitations in functioning. See Schink, 935 F.3d at 1264-68. Unlike in Schink, here, the evidence of any mental disorders during the time period at issue is minimal and does not establish functional limitations.

In Arce, the ALJ's step-four RFC assessment "was limited to Arce's physical abilities and impairments and erroneously omitted considering her

---

On July 2, 2024, Mr. Mestre reaffirmed that Plaintiff suffers from depression and anxiety that make her "concentration very slow" but would not otherwise interfere with Plaintiff's ability to stay on task throughout the day or attend work. Tr. at 826-27. According to Mr. Mestre, though, Plaintiff would have marked limitations in most specific mental functioning areas. Tr. at 830-31. Then, on July 31, 2024, Dr. Potluri opined Plaintiff met the criteria to meet Listing 12.06, pertaining to anxiety, as characterized by marked limitations in the abilities to interact with others and concentrate, persist, and maintain pace, and moderate limitations in the ability to understand, remember, or apply information. Tr. at 833-34. Dr. Potluri also opined that Plaintiff's depressive disorder caused moderate limitations in the abilities to interact with others, concentrate, persist, and maintain pace, and adapt or manage herself. Tr. at 835-36. The ALJ found all of these opinions to be unpersuasive as they relate to the relevant time period, Tr. at 18-21, and Plaintiff does not challenge these findings on appeal.

mental ones." Id. at *2. Here, however, the ALJ's findings make clear that he explicitly considered Plaintiff's mental impairments when assessing her RFC prior to the DLI and elected not to include any functional limitations as a result of such impairments. The ALJ's conclusions are reasonable and supported by substantial evidence.

## V. Conclusion

The ALJ's Decision is supported by substantial evidence. In light of the foregoing, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **AFFIRMING** the Commissioner's final decision.

2. The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on September 15, 2026.

James R. Klindt
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies:
Counsel of Record